---
Bean *v*. Brackett.
---

---

## BEAN *v*. BRACKETT & a.

Where a debtor, with a view to keep his property out of the reach of creditors, agreed with a third person to buy a lot of land, and give his notes and a mortgage for the price, and then to give to the debtor a bond to convey to him the land, on payment to him of notes of like amount and date; and the debtor, in pursuance of this arrangement, goes into possession, and erects buildings on the land — *Held*, the transaction cannot be impeached for fraud, because there is no transfer of the debtor's property to defeat or delay creditors; and because the debtor's right under the bond remains open to attachment, as if he held the legal estate.

*Held*, the debtor has an equitable estate in the land, and any buildings he erects become a part of the realty, subject to the mortgage to the original owner; and they are not to be regarded as personal property. If they are mortgaged by the debtor, his mortgage should be recorded in the county records, as a deed of real estate; and if he describes the premises as buildings, the description may pass the land on which they stand.

*Held*, if the debtor becomes a bankrupt, and his schedule describes his interest as subject to a mortgage on the buildings, and the assignee, by license of the District Court, sells the estate as it is described in the schedule, the purchaser cannot take advantage of the fact that the mortgage was made to give a fraudulent preference, though the assignee might have avoided it, or sell the prem-

Bean *v.* Brackett.

ises as free from the incumbrance. The power to avoid such mortgage is to be exercised for the benefit of the estate, and not of the speculator at the sale.

If the purchasers at the assignee's sale have previously taken an assignment of the original mortgage, and recovered possession of the land and buildings by a suit upon it, and have taken the rents and profits till they exceed the amount due upon the mortgage, and nothing appears to change the ordinary rule that purchasers of land, subject to a mortgage, are to contribute proportionately, the whole is to be applied in discharge of the mortgage, and the mortgage is to be decreed to have been fully paid and discharged.

The testimony of the assignee in bankruptcy is competent evidence to prove the posting of the notices of the sale, and their contents, it appearing that he had no knowledge where they were, or what had become of them.

THIS is a bill filed under the provisions of the Revised Statutes, in the court of Common Pleas, praying for an account of a mortgage debt, and to redeem the mortgaged property.

The petition charges that P. A. Bean, on the 4th of April, 1840, mortgaged the land in question, situate in Littleton, to John Gile, to secure four notes of sixty-two dollars and fifty cents each, payable in one, two, three and four years, with interest annually. Gile recovered judgment on one note, and took his execution, and on December 10, 1842, the equity of redemption was sold on the execution to the defendants, who had previously, on the first of the same month, taken an assignment of the mortgage from Gile.

One F. Palmer erected valuable buildings on this land, under a contract to buy it of P. A. Bean, and on the 23d of November, 1842, mortgaged the buildings to the petitioner, W. P. Bean, to secure certain debts to him.

P. A. Bean, on the 20th of March, 1843, for a valuable consideration, conveyed his right to the petitioner, and on the 28th of March, 1843, the defendants gave the plaintiff notice that they had taken possession for the purpose of foreclosure.

The petition sets forth a request in writing, signed by the petitioner, and addressed to the petitionees, dated March 21, 1844, calling for an account of the debt secured by P. A. Bean's mortgage to John Gile, dated April 4, 1840, of a house lot in Littleton village, where Palmer built a house and barn, and of all

damages and costs from non-fulfillment of the mortgage, and of all rents and profits received from said premises, and that the signer, having the mortgagor's interest, desired to redeem, and that no account was furnished.

It prays for such account, and to redeem by paying the balance due, and that the mortgage may be discharged.

The answer alleges that F. Palmer bargained with J. Gile for this land for two hundred and fifty dollars, to be conveyed to him April 4, 1840, and payment to be made in four equal yearly installments, secured by notes and a mortgage on the land; but Palmer was embarrassed, and for the purpose of placing the land, and the buildings he might put upon it, beyond the reach of creditors, it was deeded to P. A. Bean, who gave his notes and mortgage to Gile, and was to hold the property for Palmer, to defeat his creditors; and Palmer gave four notes of corresponding amount, &c., to Gile, and Bean gave him a bond, to convey to him on their payment, and Palmer erected buildings on the land.

On the 3d of December, 1842, Palmer filed his petition, and was declared a bankrupt, and T. Stevens was appointed his assignee. The mortgage to the petitioner is alleged to be made in contemplation of bankruptcy, and for the purpose of giving to him a preference over Palmer's general creditors, and so void, and the land vested in the assignee; and on the 12th of August, 1843, the assignee, by license of the District Court, sold the interest of Palmer at public auction, to the petitionees.

The answer then denies the right to redeem. To this there is a replication and demurrer.

The case was sent to a commissioner to state the facts necessary to raise the question of the petitioner's title, and the amount of rents and profits received for the use of the land and buildings, respectively. And the questions arise on his report.

The report states that on the 4th of April, 1840, P. A. Bean purchased the land of J. Gile, upon which the buildings in question stand, for two hundred and fifty dollars, and gave his notes and mortgage, as stated in the petition. On the same day,

Bean v. Brackett.

he gave a bond to F. Palmer conditioned that on Palmer's paying to him four similar notes, he would convey to him, or to any other person he should direct, the same land by a good warrantee deed.

In the first place, F. Palmer bargained with Gile for the land, and was to take a deed and give his notes and mortgage. He afterwards made an arrangement with P. A. Bean to take the deed, and give his security, and to take Palmer's notes, and give him a bond for a deed, when they were paid. The purchase was made to accommodate Palmer with a lot on which he might erect buildings for his own occupancy. Palmer was expected to pay his notes as they became due, to enable P. A. Bean to pay Gile; but he never paid any thing. This arrangement was made, solely because of the indebtedness of Palmer, and to prevent the property being taken by his creditors. The buildings were erected solely by and at the expense of Palmer, for his own use, with the view before stated, and with the assent of P. A. Bean. But J. Gile had no participation in the objects or purposes of Bean and Palmer. Palmer occupied the buildings till he was dispossessed a few days before the first of April, 1843, by virtue of a writ of possession in favor of the petitionees, who had become the assignees of Gile's mortgage. On the 28th of March, 1843, notice was given by the petitionees to the petitioner, that they had taken possession for the purpose of foreclosing Gile's mortgage.

On the 23d of November, 1842, F. Palmer mortgaged the buildings to W. P. Bean, the petitioner, by the following description: " The buildings on a plot of ground in Littleton village, conveyed by J. Gile to P. A. Bean, in April, 1840, and mortgaged back by said Bean to said Gile, being the same buildings now occupied by me," to secure several notes described, and to indemnify said Bean from liabilities to others on Palmer's account, as set forth. This mortgage was recorded in the county registry of deeds, and not in the town clerk's office in Littleton; and it was not verified by oath of the parties. The claims secured by this mortgage are found to be just.

At the date of this mortgage Palmer knew himself to be deeply insolvent, and had formed the design to take the benefit of the bankrupt act, if he could not compromise with his creditors, and get fully discharged from his debts and liabilities. He failed to obtain such compromise, and, in conformity to his previous design, filed his petition in bankruptcy, and was decreed a bankrupt, March 22, 1843. The buildings were set forth in the schedule of assets, filed by Palmer with his petition, as being upon the land purchased by P. A. Bean of Gile, and as being mortgaged to W. P. Bean, the petitioner. T. Stevens was appointed assignee of Palmer's estate.

On the 20th of March, 1843, P. A. Bean conveyed said land to W. P. Bean, the petitioner, by the same description as is given in Gile's deed to P. A. Bean. The consideration of this conveyance was a verbal agreement to pay the notes to Gile, and costs, and to indemnify P. A. Bean against them.

An order for the sale of the property and claims, set forth in the schedule annexed to Palmer's petition, was granted upon petition, and after notice, on the 21st of June, 1843. The deed of the assignee to the petitionees recited that he "was duly empowered by said court to sell the estate and property of which said bankrupt was seized and possessed at the time of his bankruptcy, at public auction, after giving due notice." It also recited a notice of sale and a sale, August 12, 1843, and that E. Eastman offered twenty dollars, and was the highest bidder " for the following granted premises," and that in consideration of that sum paid by him, he conveyed to him and W. Brackett " all the right, title and interest which passed to me by virtue of my appointment and commission as assignee of the estate of said Palmer, in the following described property; to wit, ' a certain piece or parcel of land,' &c., the same which P. A. Bean purchased of J. Gile, together with the house, barn and shed standing thereon."

Upon the back of the bond of Bean to Palmer was indorsed an assignment by Stevens, as assignee, to the petitionees, " of all the right, title and interest which passed to me by virtue of

my appointment and commission as such assignee, in the within bond or obligation, in consideration of one dollar," &c.

The assignee returned that he sold to E. Eastman and W. Brackett, "interest in dwelling-house, barn, shed, and bond of P. A. Bean, for deed of land on which they stand, for twenty dollars."

At the hearing, T. Stevens, the assignee, testified that he described the property in the notice of sale as the interest of the assignee in the property advertised for sale; that he had the schedule with him, and had no doubt that he represented the property as it was described in the schedule; if it was there represented as mortgaged, he had no doubt he so represented it. He did not state that the mortgage of Palmer to Bean was fraudulent, nor that he sold the entire property in the buildings; and no question was ever made between him and W. P. Bean, as to the validity of his mortgage. Bean was present at the sale, and there was conversation as to his mortgage, but none as to its validity.

The assignee's petition for an order of sale stated that said F. Palmer, at the time of his bankruptcy, was seized and possessed of the estate and property in the schedule set forth, and prayed for the sale of said property. The property was described in the schedule thus: "Int. in a dwelling-house, barn and shed, situated in Littleton Village, N. H., and standing on land bought of John Gile by P. A. Bean; said buildings mortgaged to W. P. Bean," &c. "Bond of P. A. Bean for a deed of the piece of land on which the bankrupt's house stands, in said Littleton Village," &c.

The order of the District Court directed "that the said property and claims set forth in the schedule annexed to said petition, be sold," &c.

The assignee did not in terms set up the buildings at the sale as discharged from the mortgage, nor so convey them. He represented the property as it was described in the schedule.

The evidence of the notice of sale was objected to. It was the parol testimony of the assignee, who testified that he posted

written notices of the sale, and did not know where they were; he could not state from recollection where they were posted up, nor how many were so posted; he never posted less than three in any case; he was assignee in sixty or eighty cases; he posted the notices at the public houses, and also at more or less of the stores. The notices stated the time and place of sale and some of the leading articles of sale; such was his invariable rule; he posted the notices fifteen days or more before the sale, exclusive of the days of posting and sale. He did not recollect this case particularly. The sale was at Cobleigh's inn, in Littleton Village. There were two public inns and a meeting-house in the village at the time.

The commissioner found the rents received by the petionees, including pay for water furnished by them, . . . . . . . $577.20

And he allowed them:

| | | |
|---|---|---|
| For taxes, . . . . . | $23.66 | |
| For care, &c., at $4 per year, . . . | 44.00 | |
| For water, $6 a year, . . . . | 66.00 | |
| For repairs, . . . . . . | 15.02 | |
| Amounting to, . . . . . . . | | 148.68 |
| Balance, . . . . . . . | | 428.52 |
| Interest cast on the balance to October 23, 1855, amounts to, . . . . . . | | 153.30 |
| In the whole, . . . . . . | | 581.82 |
| If the defendants are chargeable with compound interest, there should be added . . . . | | 32.80 |

Objection was made that the petitionees should be charged with full rent the first year, because they could have rented it to Palmer, but they declined to do so, because they had just dispossessed him by a suit, but the commissioner finds their refusal to let to him was reasonable.

The petitioner objects to any allowance for care, but the com-

missioner finds it reasonable, and to the allowance of taxes for 1843 and 1844, but the commissioner finds that they ought to be allowed.

The commissioner finds two thirds of the rents derived from the buildings, and one third from the land.

*Goodall* and *Carpenter*, and *C. R. Morrison*, for the petitioner.

I. There can be no question but that all rents, received from March 28, 1843, when the defendants took possession, to August 28, 1843, the date of the assignee's deed, must be applied upon the mortgage debt; because during that time the defendants had no title, and claimed to have none, except under the mortgage.

II. As Gile had no participation in, or knowledge of any fraudulent purpose of Palmer or P. A. Bean, and gave no consent to the erection of the buildings, he and his assignees could hold them under the mortgage. *Pettengill* v. *Evans*, 5 N. H. 57; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306; *Preston* v. *Briggs*, 16 Vt. 130, 131. And therefore whoever holds Palmmer's title to the buildings must contribute to pay off the mortgage debt; and the whole rent received by the defendants, from the buildings as well as the land, must be applied to redeem it. *Stevens* v. *Cooper*, 1 Johns. Ch. 425; *Taylor* v. *Bassett*, 3 N. H. 294; *Robinson* v. *Leavitt*, 7 ditto 100; *Jenness* v. *Robinson*, 10 N. H. 205; *Doe* v. *Thompson*, 2 Foster 217; *Gibson* v. *Crocker*, 5 Pick. 152; *Hubbard* v. *Mill Dam Co.*, 20 Vt. 402. If the defendants hold Palmer's title, they must contribute; or, what brings us practically to the same result, both the equitable and legal title being united in them, August 28, 1843, by their voluntary act, the mortgage and mortgage debt was thereby extinguished *pro tanto*, that is, two thirds of it, according to the commissioner's report. Such is the rule *prima facie*, when no equity intervenes to prevent it. *Greenough* v. *Rolfe*, 4 N. H. 363; *Parkman* v. *Welch*, 19 Pick. 231; *James* v. *Morly*, 2 Cow. 246; *Willard* v. *Harvey*, 5 N. H. 252; *Robinson* v. *Leavitt*, 7 N. H. 97, and cases cited; *Heath* v. *West*, 6 Foster 201; *Slocum* v. *Cattin*, 23 Vt. 137.

2. But even if the assignee of Palmer's title could hold the buildings free of the mortgage, the defendants have not attempted to do so. On the contrary, they took possession of both the land and buildings under the mortgage, and notified the plaintiff that they held both for the purpose of foreclosing, and they have never given any notice to the contrary. To allow them now to say that they have held the buildings as assignees of Palmer's title, and not under the mortgage, would operate as a fraud upon the plaintiff. They notified the plaintiff that they took possession and held it as mortgagees, which they might do without interfering with any rights which the plaintiff claimed in them. An entry and claim to hold them as assignees of Palmer's title, on the contrary, would be adverse to the plaintiff's claim. It would be a conversion, and they might now be entitled to hold them, though it should prove that the plaintiff, and not the defendants, is in fact the holder of Palmer's title. At all events, the plaintiff must inevitably lose a part if not all the rents already accrued from them. *Vide Preston* v. *Briggs,* 16 Vt. 125. They have in fact received the rents by virtue of the mortgage, and they must account for them upon it. They are estopped by their conduct from now saying that they have not held them under the mortgage. 1 Greenl. Evidence 240, sec. 207.

III. The amount allowed by the commissioner for the care of the premises, &c., is too large, if any thing should be allowed, which we deny. Nothing is allowed in such cases in England, New-York, Kentucky, nor at present, as it appears, in Massachusetts. *Longstaff* v. *Fenwick,* 10 Ves. 405 ; *Bonithon* v. *Hackman,* 1 Vern. 316 ; *Green* v. *Winter,* 1 Johns. Ch. 27 ; *Moore* v. *Cable,* ditto 385 ; *Breckenridge* v. *Brook,* 2 A. R. Marsh. 339 ; 4 Kent's Com. 167, note. In no case, where any thing has been allowed, has the amount been greater than five per cent. The commissioner in this case allows nearly eight.

IV. Interest should be cast upon the rents with annual rests, the notes secured by the mortgage bearing annual interest. The commissioner makes the simple interest $155.30, to which $32.80

is to be added, if annual rests are to be made. *Gibson* v. *Crehore*, 5 Pick. 160, 161; *Saunders* v. *Frost*, ditto 270; *Reed* v. *Reed*, 10 ditto 400, 401; *Van Rusken* v. *Eastman*, 7 Met. 156. Interest should be made to operate equally upon both sides; and had not the rents exceeded the interest upon the debt, only simple interest would be cast upon the notes, notwithstanding they were, by the contract, to bear interest annually. See case above cited.

V. It seems very clear that the taxes of 1843 should not be allowed to the defendants, for they were paid by the plaintiff, when the plaintiff paid the taxes and costs, February 10, 1844. It was the duty of the collector to pay over the amount of the taxes to the defendants; (Comp. Laws 47, sec 13;) and it is to be presumed that he did so, though whether he did or not is immaterial — a matter with which the plaintiff has no concern. It is difficult to see upon what principle the plaintiff is to be compelled to pay them twice. *Miriam* v. *Barton*, 14 Vt. 101, is a case in point, if one is necessary.

VI. The defendants, being mortgagees in possession, it was their duty to pay the taxes, as has been held by this court in a bill in chancery, between these parties, decided December term, 1851. And therefore any costs which the petitioner has been compelled to pay, by reason of their negligence in discharging the taxes, should be set off and allowed against the taxes which they have paid. These items amount to $11.13.

VII. No interest should be allowed upon the mortgage debt after the petitioner's demand for an account and the defendants' neglect. The answer admits that the petitioner at that time notified the defendants that the money was ready.

VIII. If the defendants are entitled to have the rent apportioned, and are bound to apply the rent accruing from the land only in reduction of the mortgage debt, both costs and taxes, which the petitioner has paid, should be allowed against the taxes paid by the defendants.

IX. If either of the positions taken under the second head is sustained, all question as to the title to the buildings becomes

immaterial in this case ; but if neither of them is sustained, and the question arises, we say the petitioner has the best, and in fact, the only title to the buildings, subject, of course, to the mortgage.

1. He can hold them by virtue of his deed from P. A. Bean ; for, as between Palmer and P. A. Bean, the latter would hold them — Palmer having no right except under the bonds. He erected the buildings with Bean's assent, under a contract to purchase the land, and would not be permitted to repudiate his contract and still hold the buildings. *Evans* v. *Pettengill*, 5 N. H. 57, 58 ; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 310 ; *Eastman* v. *Foster*, 8 Met. 25, 26.

And the petitioner is a *bona fide* purchaser of P. A. Bean, without notice of any fraud, and will hold, as against the world, all rights which P. A. Bean could hold against Palmer. The consideration of the deed, P. A. Bean to the plaintiff, was a good and valuable one ; as valuable one as an agreement to pay the money ; but if it were not, none but creditors of P. A. Bean could take advantage of it. These defendants cannot. They, (granting they could *now* do it for any cause, which we deny,) could only avoid the ordinary legal consequences of the deed by showing the plaintiff a party to or cognizant of the fraudulent arrangement between P. A. Bean and Palmer.

Even if Palmer could hold the buildings against P. A. Bean, he could not hold them as against the plaintiff. *Prince* v. *Chase*, 10 Com. 381.

Defendants could not hold the buildings as against P. A. Bean, for admitting fraud, the assignee could either avail himself of Palmer's equitable interest in both *land and buildings* under the bond, (which could only be done by treating the bond as valid,) or he could treat the bond or whole arrangement between Palmer and P. A. Bean as fraudulent.

Treating Palmer's contract to purchase the land as valid, he could hold the buildings only by fulfilling that contract. Treating it as fraudulent, and avoiding it, he could of course hold no interest in the land. It might be difficult for the assignee to determine which course would be the most advantageous, yet he

could not do both. In fact, the assignee elected to pursue the former course, and treated the contract between Palmer and P. A. Bean as valid. He *sold the bond and Palmer's interest in the land.* He never undertook to sell the buildings at all, except as incident to and parcel of the realty. The words in the assignee's deed, " together with the house, barn and shed standing thereon," have no legal effect and are inoperative. *Crosby* v. *Parker*, 4 Mass. 110 ; *Winslow* v. *Ins. Co.*, 4 Met. 313 ; *Eastman* v. *Foster*, 8 Met. 25, 26. The assignee having elected to consider the contract valid, neither he, nor those claiming under him, can now say that it was fraudulent.

2. The petitioner can hold the buildings by virtue of his mortgage deed from Palmer ; for the deed, though made in contemplation of bankruptcy, was not absolutely void, but voidable only at the election of the assignee. *Smith* v. *Gordon*, 6 Law 313 ; *Nixon* v. *Jenkins*, 2 H. B. 135 ; *Butler* v. *Hildreth*, 5 Met. 47 ; *Stevenson* v. *Newnham*, 16 Eng. L. & E. 401 ; S. C., 5 ditto 512. But in this case the assignee made no attempt to avoid the deed to the petitioner. On the contrary, he treated it very distinctly and unequivocally as valid and subsisting throughout all his proceedings. He did not claim, sue for, recover or receive the buildings discharged of the mortgage. Bank Act, sec. 2. If the assignee would have avoided the deed to the plaintiff, he should have done so in a reasonable time, and unequivocally. See authority last cited.

It is reasonable he should be required to do so, because, (1.) If the security is avoided, the party ought to have such notice as will enable him to prove his debt against the bankrupt. (2.) It is for the interest of the general creditors of the bankrupt. If property is to be sold unincumbered, it is important that they should know it. No stronger example could be given under this head than this case. It cannot be supposed that creditors would have stood by and suffered property to be sold for less than $20, which was in fact worth, according to the commissioner's report, $500. To hold, therefore, that the acts of the assignee in this case were sufficient to avoid the deed in question, would sustain a

gross fraud, both upon the plaintiff alone, as holder of the secur-
ity, and upon the plaintiff, in common with the rest of Palmer's
general creditors, and enable the defendants to make a most ex-
traordinary speculation at their expense. (3.) Because the as-
signee did not apply for nor procure a license to sell the buildings
discharged of the mortgage, and, therefore, we say *must* have
sold them subject thereto.

3. The objection that the deed in question was not executed
as a deed of personal property, and recorded in the town
records, cannot prevail. (1.) For the reasons stated under the
last two points — the deed being valid between the parties.
Comp. Stat., chap. 138, sec. 10. (2.) Because the mortgage
being valid as between the parties, the assignee could invali-
date it *only upon the ground of, and by showing fraud.* In all
other respects he takes only such rights and interests as the
bankrupt himself had and could claim and assert at the time of
the bankruptcy, and is affected with all the equities which
would affect the bankrupt himself if he were asserting those
rights and interests. *Mitchell* v. *Winslow,* 6 Law 352. (3.)
The buildings, for the purpose in question, should be deemed
real estate, and mortgaged as such. *Eastman* v. *Foster,* 8 Met.
19; *Mills* v. *Pierce,* 2 N. H. 11, and cases cited.

The objection that the existence of the debts secured by the
mortgage was not shown, cannot prevail. *Robertson* v. *Stark,*
15 N. H. 512; *Webb* v. *Stone,* 4 Foster 282.

X. The defendants are not entitled to question the validity of
the mortgage from Palmer to Bean upon any ground; neither
are they entitled to object that the buildings did not pass to the
plaintiff by virtue of P. A. Bean's deed to him, for they ac-
quired no title to them by virtue of the assignee's proceedings:

1. Because the court did not determine the time and place of
sale. See Order of Sale, *Osborn* v. *Baxter,* 4 Cush. 406; sec.
9 of Bank Act, Rule of District Court of N. H. Dis.

2. No sufficient and proper notice of the time and place of
sale was given by the assignee. The evidence to prove what
notice was given, is altogether incompetent and insufficient.

*H. A. Bellows* and *Bellows & Farr*, for petitioners.

The buildings were erected by Palmer, and under such circumstances that his creditors could, as against P. A. Bean and his assignee, with notice, take them at any time for his debts.

They were placed there in pursuance of a fraudulent arrangement between Bean and Palmer to defeat his creditors, and were personal property. *Harris* v. *Gillingham*, 6 N. H. 555; *Cutting* v. *Pike*, 1 Foster 347, and former opinion in this case in equity. This right passed to the assignee, as the representative of the creditors of Palmer, and was conveyed to the respondents, who acquired the same rights as the assignee.

The buildings were treated as personal estate by the bankrupt in his schedule of assets; by the assignee in his petition for license to sell; in the license itself, and in the sale and conveyance. The assignee sold and conveyed all the interest of the bankrupt that passed by the decree in bankruptcy, and the purchasers could impeach a fraudulent mortgage, whenever it was asserted against them. *Kingsbury* v. *Weld*, 3 N. H. 30 ; *Brewer* v. *Hindman*, Grafton Co.

They did this in their answer to this petition, filed September term, 1844, — the petition itself being filed at the same term. Nor was this affected by the notice of foreclosure, as that was before the defendants acquired Palmer's interest.

The mortgage to W. P. Bean was made by Palmer in contemplation of bankruptcy, and void by the act of Congress of August, 1841.

The report finds it made in contemplation of bankruptcy, and the petitioner cannot hold under that title, nor can he by the quitclaim from P. A. Bean. He could not hold against the defendants, and the petitioner stands in no better situation. He is not a *bona fide* purchaser for consideration. He paid nothing, and had actual and constructive notice that the buildings were Palmer's. His mortgage of November 23, 1842, asserts it. His deed from P. A. Bean, of March 20, 1843, when he pays nothing for the buildings, shows it. And his title to the buildings, which is based in the petition upon that mortgage, is void.

Palmer was in possession, claiming them as his own, and exerting over them the most unequivocal acts of ownership, and W. P. Bean was a party to it.   This puts Bean on inquiry.

Defendants are not bound to contribute to the redemption. As to P. A. Bean, the defendants might have removed the buildings at once, on the sale, and the petitioner is in no better situation to object.   Being suffered to remain makes no difference. They stand on the same ground as the water used  there.

Petitioner was not injured by it, as otherwise no income would be derived from the land.

The petition claims for W. P. Bean the whole right to redeem, and does not assume that the defendants own any part of the equity.   In this proceeding, then, he cannot claim of defendants a contribution.

The rents in point of fact were not received by the defendants as mortgagees, but they claimed the whole estate by their various titles.   That appears by their answer, filed September, 1844. The plaintiff claims by deed from P. A. Bean, and by Palmer's mortgage, and the defendants disputed this right.   The dispute has existed ever since April 1, 1843.

The defendants are entitled to a compensation for care of the property.

Interest should be allowed to the present time.   No tender was made, no money ready.   *Hall* v. *Cushman,* Coos ;  *Bellows* v. *Stone,* Coos.

The defendants do not admit other positions taken in behalf of the petitioner, but many of them are not material.

BELL, J.   Upon the facts found by the commissioner, at the close of the transaction between Gile and P. A. Bean, their relative rights were as follows :  Gile was a mortgagee in good faith, in no way affected by the bargains or objects of Palmer and P. A. Bean, and his rights, legal and equitable, as such, could not be affected or impaired by any dealings of theirs, or their assigns, to which he was not a party.

P. A. Bean was a trustee for Palmer, with an equitable right to hold the property for his indemnity against his notes.

Palmer was in equity the owner of the land, subject to the mortgage, and to the legal and equitable interest of Bean as trustee. *Cutting* v. *Pike*, 1 Foster 347.

No question of fraud comes in, for though the parties might design to affect the rights of creditors by their arrangements, yet they have not interfered with any property of Palmer. They have as yet put none of his property out of the reach of his creditors. They have merely given him a conditional claim to a part of Gile's property, and placed it in such shape that Palmer could erect his buildings upon it, as they supposed, in safety from his creditors. But in this object they have failed to succeed. By the Revised Statutes, the right of a party to receive a conveyance by virtue of any contract, is made liable to attachment and sale on execution, like an equity of redemption. Chap. 184, sec. 5 ; ch. 196, secs. 11 and 13. A party, therefore, by taking a bond for a conveyance, does not in any sense place the property out of the reach of his creditors.

If it were otherwise, those who claim under Palmer can not set aside a conveyance on account of his fraud, or a fraud to which he was a party, unless they stand in the relation of his creditors, (*Cutting* v. *Pike*, 1 Foster 347 ;) and as such they can derive no advantage from avoiding the deed of Gile to Bean, or the bond of Bean to Palmer, for it is upon them alone that Palmer's interest, and their own as derived from him, depends.

Palmer entered upon the land, and erected the buildings in question, and continued to occupy them till March, 1843, when he was dispossessed by the petitionees, under an execution issued upon a judgment rendered in their favor as assignees of John Gile's mortgage. This entry and occupation of Palmer was notice to every body that he had a claim and interest in this land, (*Cutting* v. *Pike*, 1 Foster 347 ;) and it seems to be a complete answer to any suggestion of a fraudulent design to place his property out of the reach of creditors. Such a purpose would seem to have been abandoned when he thus gave public notice of his interest.

The assignment of Gile's mortgage to the petitioners is to be

taken as a *bona fide* transaction, nothing appearing to the contrary. It vested in them all Gile's rights not liable to be affected by the private negotiations of Palmer and P. A. Bean. It was not for Gile or for them to take advantage of those negotiations, however fraudulently intended as to others.

As to Gile and his assignees, the buildings erected by Palmer became at once covered by the mortgage; for it is well settled that a mortgage binds not only the estate, and all its appendages, as they were at the time of the execution, but it also binds all buildings and fixtures erected by any person upon the land, unless this effect is prevented by some special agreement of the mortgagee; and it is immaterial by whom the buildings are erected, or the fixtures attached, except in the case of tenants. *Gardner* v. *Findlay*, 19 Barb. 317; *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306; *Butler* v. *Paige*, 7 Met. 40; *Corliss* v. *M'Lagin*, 29 Me., (16 Shep. 115;) *Pettingill* v. *Evans*, 5 N. H. 54; *Cutting* v. *Pike*, 1 Foster 347.

As to P. A. Bean, and those who stand in his place and hold his rights, the buildings erected by Palmer became a part of the real estate. It is indispensable to give to buildings, so erected, that they would ordinarily become a part of the realty, the character of personal property, that they should be built upon the lands of another person, upon an agreement that the builder should be at liberty to remove them. *Wills* v. *Bannister*, 4 Mass. 514; *Doty* v. *Gorham*, 5 Pick. 487; 6 N. H. 555; 2 Bour. Inst. 157. Now, here, Palmer, as has been said, was in equity the owner of this property, subject to the payment of his notes to Bean, and Gile's mortgage, upon the execution of Bean's bond. His interest was at least of the value of all the buildings he erected.

There was no agreement, express or implied, that Palmer should have a right to remove these buildings in any event. There is no presumption that a party who erects buildings on another's land does so upon any agreement that they may be taken away. And in the case of a bond for a conveyance, as in this case, every presumption would be against the idea that such

an agreement could have entered into the views of either party. In this case, Bean needed the security of these buildings to make his operations safe, and upon the purposes found by the commissioner, Palmer needed that the buildings should be and continue part of the real estate, as otherwise they might be taken and sold as personal estate, for payment of his debts.

The deed of P. A. Bean to W. P. Bean had no effect but to substitute W. P. Bean for P. A. Bean, as trustee for Palmer and those who might hold his title. He had notice of the state of the title, and paid no new consideration, and holds merely P. A. Bean's rights, subject to his obligations.

The mortgage deed of Palmer to W. P. Bean gave him the right to redeem the original mortgage of P. A. Bean to Gile, if Palmer's deed is to be regarded as a valid conveyance. If it is invalid, as W. P. Bean is at' most a mere trustee for the petitionees, who hold, by virtue of the deed of the assignee of Palmer, all the remaining interest in the property, he would have no claim to maintain this petition, unless he can successfully impeach the deed of the assignee.

The mortgage of Palmer to Bean is objected to, because it is not executed or recorded in conformity to the statutes regulating personal mortgages ; but as we regard these buildings as real estate, there is no foundation for this objection.

This deed may be construed as conveying to W. P. Bean the title to these buildings, as a part of the real estate, like a deed of a coal mine, or of a chamber in the inns of court, or like an assignment of dower in certain parts of a dwelling-house. *Aldrich* v. *Parsons*, 6 N. H. 555 ; or it may be construed to convey, not the buildings merely, but the land on which they stand, and necessary for their use, agreeably to the settled construction of a deed of a house, mill, &c. Shep. Touch. 94 ; Co. Litt. 5, b ; where Coke says, an acre or more may pass by the name of a house. It is immaterial which of these constructions is adopted, since in either view the deed would be sufficient upon its face to convey to W. P. Bean the interest of Palmer in the property conveyed, with a right to redeem the mortgage to Gile,

and to require a contribution from the owner of the part not conveyed, if any.

But the commissioner finds that at the date of this mortgage to W. P. Bean, Palmer was deeply insolvent, as he knew, and he then contemplated taking the benefit of the Bankrupt act, if he could not compromise with his creditors. Having failed to effect a compromise, he filed his petition and was decreed bankrupt.

Under the provisions of the Bankrupt law, such a conveyance was clearly invalid. It provides that all future payments, securities, conveyances, or transfers of property, or agreements made, or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, shall be deemed utterly void and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover and receive the same as part of the assets of the bankruptcy.

If the deed of Palmer to Bean should be regarded as utterly void, in the language of the Bankrupt law, a mere nullity, it is of course open to the defendants to take advantage of it, as it would be to any and every other person. But it is contended that this deed is, notwithstanding, not void in the sense of being a mere nullity, but is invalid and avoidable by those entitled by law to take the exception. It would not, for instance, be voidable by Palmer himself, for he must found his claim upon his own fraud and violation of law. If it is to be avoided, it can only be done, it is said, at the election of the assignee, and for the benefit of the creditors, and not of a mere speculator at a sale.

Several cases are cited in the argument in support of this view, which we have examined. In *Smith* v. *Gordon*, 6 Law 313, it was held, in substance, that if any right of property would be a burden, rather than a benefit to the estate, the assignee is not bound to avail himself of it, and the property remains unaffected, in the hands of the bankrupt, or, as in that case, in the hands of a creditor. The same point was held substantially by this court in the case of *Taylor* v. *Sumner*, in Grafton Co.

In *Nixon* v. *Jenkins*, 2 H. B. 135, it was held that a demand by the assignee of goods, collusively sold by a bankrupt, is required, in order to sustain an action, because, till a demand, it is uncertain whether the assignee will not affirm the sale. There must be a disaffirmance on the part of the assignee.

So it was held in *Butler* v. *Hildreth*, 5 Met. 49, that an assignee of an insolvent estate may affirm a sale of goods, made by the insolvent for the purpose of delaying or defrauding his creditors, and receive the price of the goods from the vendee. And *Stevenson* v. *Newnham*, 16 Eng. L. & E. 401, recognizes the principle of Nixon v. Jenkins, that the assignee may affirm or disaffirm a contract for goods fraudulently sold by a bankrupt, and holds that the fraud only gives a right to avoid a contract or purchase, and that the property vests until it is avoided.

The inference from these cases, as well as from a consideration of the nature of the case, is, that the assignee has an election to avoid a security made in fraud of the bankrupt law, and that if he does no act indicating such choice, and conveys the property, subject to the mortgage, the purchaser takes it, subject to the incumbrance, and he has no power to avoid it.

It then becomes material to inquire whether the assignee has done any act to avoid the petitioner's mortgage, or has sold this property free of that incumbrance, so as to authorize these defendants to avail themselves of its defects.

In the report of the commissioner the facts are fully stated, relative to the description of this property in the schedule annexed to Palmer's petition to be declared a bankrupt, and relative to the petition for and the order of sale of the bankrupt's estate, the notice of sale, the proceedings at the sale, and the conveyance of the assignee. And from these we think the order of sale was " of the estate and property of which said bankrupt was seized and possessed at the time of his bankruptcy," and the conveyance was " of all the right, title and interest which passed to me by virtue of my appointment and commission as assignee of the estate of said Palmer, in the following described property, to wit, in a certain piece or parcel of

land, as set forth in the bankrupt's schedule, the same which P. A. Bean purchased of J. Gile, together with the house, barn and shed standing thereon," with an assignment on the bond of " all the right, title and interest which passed to me by virtue of my appointment and commission as such assignee, in the within bond or obligation."

Upon the bankrupt's schedule the buildings were described as mortgaged to W. P. Bean, and the assignee testified that he sold the property as described in the schedule, and not as free of said Bean's mortgage.

Nothing appears in the case which shows that the assignee did any act to avoid Bean's mortgage, or designed to convey the property free of that incumbrance, or to grant any power to avoid this mortgage, unless such power results by law from a conveyance of the property.

The question is of course presented in its broadest and most general form, whether the power of avoiding fraudulent conveyances made by a bankrupt, is confined to the assignee, or whether such right passes with the property to the grantee of the assignee, as a matter of course ; and, as before stated, we are of opinion that the purchaser in such case takes the property, subject to the incumbrance which the assignee has not chosen to avoid. *Bean* v. *Brackett*, Grafton, August, 1846.

It is objected to the title claimed by the petitionees, as derived from the sale of Stevens, the assignee of Palmer, that there is no competent evidence that the notices of the sale were given according to law. It does not seem to us that there is any foundation for the objection. The witness testified that he posted written notices, and that they were lost. He was the person whose duty and interest should have led him to preserve them, but he had no knowledge what became of them. This was sufficient evidence of the loss, and his evidence was sufficient as secondary evidence.

It may, perhaps, be doubted whether this petitioner stands in a position to raise a question as to their title. He has in equity no title beyond his claim under his mortgage.

The result, then, is, that the petitioner, being an assignee to the extent of his mortgage in the property mortgaged to Gile, has a right to apply to the court to redeem that mortgage, and to have an account taken of all the income of the property, and after the due application of this, to redeem by paying his proportion of the balance of the mortgage debt, according to the relative value of his interest, as compared with the residue of the property, and to have a decree discharging the mortgage. He will then be entitled to foreclose his own mortgage, unless the debt and the amount he has contributed to discharge the Gile mortgage is paid.

Upon the facts reported by the commissioner we understand that the rents received, after deducting suitable allowances, are more than enough to pay the Gile mortgage, and that mortgage must be discharged.

The petitionees, then, having been paid the amount of Bean's notes to Gile by the income of Palmer's property, Palmer's notes to P. A. Bean are consequently paid, and W. P. Bean, who holds P. A. Bean's interest, is now a trustee for himself to the amount of his mortgage, and for the residue, so far as appears to the petitionees. If W. P. Bean's claims are paid, he will be a trustee for the petitioners for the whole.

This result renders unnecessary the consideration of several questions discussed in the argument.